IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| RUSSELL BLAINE KISER JR. | § | |
| v. | § | CIVIL ACTION NO. 6:08cv272 |
| MARK DEARING, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Russell Kiser, an inmate of the Texas Department of Criminal Justice, Institutional Division proceeding *pro se*, filed this civil action under 42 U.S.C. §1983 complaining of alleged violations of his civil rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. As Defendants, Evans named TDCJ officers Mark Dearing, Johnathan Hyatt, William Sexton, Heath Strange, Robert Nash, Cody Barber, William Jock, Regina Oliver, Mikkel Robbins, and Charles Christian.

An evidentiary hearing was conducted on April 16, 2009, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing, the parties consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding. 28 U.S.C. §636(c).

Following this hearing, the Court dismissed Jock, Oliver, Robbins, and Christian, and ordered the remaining Defendants to answer the lawsuit. A trial before the Court was conducted on June 8, 2010.

At this trial, Kiser complained first that not all of his witnesses were called. The records in the case show that on January 19, 2010, the Court scheduled a trial for April 20. Kiser was given until March 22, 2010, in which to submit his list of witnesses. This order also told Kiser how to

request witnesses, giving him a form to follow, and instructed him that the request for witnesses must include a summary of the expected testimony.

The Defendants filed their witness list on March 22, within the deadline. On March 31, 2010, after the deadline had expired, Kiser filed a motion for extension of time in which to file his witness list, asking for an additional 15 days in which to do so. This motion contained a list of 15 inmates, eight employees, and two other persons. No summaries of anticipated testimony for any of these persons was included. Because this request would take the due date for the witness list up to within a few days of trial, the Court granted the request for a continuance, canceled the April 20 trial setting, and gave Kiser until April 20 to file a new request for witnesses.

On April 6, Kiser filed a new request for witnesses. This request listed 14 TDCJ employees, 13 inmates, three persons whose connection is unknown, a physician, and himself as witnesses. No specific summaries of testimony were included for any of the requested witnesses, despite the court order requiring such summaries. The trial was rescheduled for June 8. The two first-named inmate witnesses, seven of the employee witnesses (including defendants in the case), and the physician listed on Kiser's witness list were called to testify at trial.

At trial, however, Kiser complained that he wanted three other inmate witnesses called, stating that these persons had actually seen the incident. Although Kiser had been told to provide a summary of the witnesses' anticipated testimony and had originally been given a deadline of March 22 in which to file his witness list, the first time that he notified the Court that these inmate witnesses had actually seen the event was on May 10, 2010, well after even the extended deadline of April 20. Consequently, his request to call these witnesses was once again denied at trial.[1]

Kiser also complained that he wanted a jury trial. The record shows that although the Defendants originally demanded a jury trial, they moved to withdraw this request on December 28,

---

[1] *See* Geiserman v. MacDonald, 893 F.2d 787, 790 (5th Cir. 1990) (a trial court's decision to exclude evidence as a means of enforcing a pre-trial order must not be disturbed absent a clear abuse of discretion), *citing* Davis v. Duplantis, 448 F.2d 918, 921 (5th Cir. 1971) (trial court may sanction party's failure to comply with scheduling order by excluding evidence).

2009. A bench trial was scheduled for April 20, 2010. On January 29, 2010, Kiser filed his first jury demand in the case. This demand was denied as untimely on February 9, 2010, and the case was tried to the Court on June 8, 2010.[2]

Findings of Fact

In a trial before the bench, the Court must find the facts specially and make conclusions of law. Rule 52(a), Fed. R. Civ. P. This Rule recognizes and rests upon the unique opportunity afforded the trial court judge to evaluate the credibility of witnesses and to weigh the evidence. Inwood Laboratories v. Ives Laboratories, 456 U.S. 844, 855 (1982).

In this case, I have examined the exhibits and considered the testimony of the parties and witnesses in the cause. I have also noted the demeanor of the parties as they appeared in the courtroom. After careful review of all of the evidence presented, I have found the following as facts:

Russell Kiser was confined in the Michael Unit on June 29, 2006. He was returning from breakfast when Officer Strange called him over to conduct a strip search. Kiser got down to his boxer shorts, but then lunged at Strange with a closed fist. Strange hit Kiser in the face, wrapped his arms around him, and took him to the floor. Strange, who said that he was a former football player, was six feet three inches tall and weighed 305 pounds, while Kiser weighed approximately 175 pounds.

Officer Timothy Cotton, working the desk, called on the radio that there was an ongoing altercation. Officers Johnathan Hyatt, Cody Barber, and Robert Nash responded to the scene. Nash placed restraints on Kiser's legs while Hyatt and Barber restrained his upper body and placed handcuffs on him. Officer Mikkel Robbins came to the scene to operate the video camera,

---

[2]Under Rule 38(b), requests for a jury trial must be made not later than ten days after the service of the last pleading directed to the issue upon which the jury trial is sought. The Court computed this time period as running from the withdrawal of the jury demand, which was the last pleading directed to the jury demand itself, and determined that Kiser's first request for a jury was filed a month later, well outside of the ten-day period set out in Rule 38(b). The Court also noted that the case had been pending for 18 months before Kiser filed his first, untimely jury demand, giving him ample opportunity to which to file a timely demand. Kiser testified at trial that he "could not" file a timely jury demand, but offered no explanation as to why he could not have done so.

and Sgt. Dearing came to take control of the incident. The video camera began to run after the use of force was over. Officer Nash and Officer Albert Hyatt escorted Kiser to the infirmary, where he was treated for a one-centimeter (i.e. two-fifths of an inch) laceration on the back of the head. Kiser was not punched or hit in the back of the head by any officer, but most likely sustained the injury in the course of being taken to the floor by a much heavier person. He also had bruises on his chest and back and a red mark on his nose, which are also consistent with being taken to the floor. Officer Sexton did not arrive at the scene until it was over and Kiser had been escorted away. An investigation by the Office of the Inspector General concluded that the officers did not use excessive force or otherwise violate TDCJ policies and procedures. No inmates were in a position to see the incident, and Kiser told the investigator that there were no inmate witnesses.

These facts were testified to by Nash, Johnathan Hyatt, Albert Hyatt, Barber, Sexton. Strange, Dearing, and OIG Investigator Charles Christian. Dr. George Steed testified that Kiser suffered from severe nearsightedness and that if he did not have his glasses, he would have difficulty in discerning people.

Kiser testified that Strange called him over for a strip search and began demanding repeatedly to know why Kiser had "disrespected his officers." Kiser disclaimed having done so, but Strange said that Kiser had "disrespected the sergeant" two days earlier. Kiser had removed all his clothes, and Strange handed him back his boxer shorts and told him to take off his glasses. When he removed his glasses, Hyatt grabbed them. Strange then took off his own glasses and handed them to Hyatt. Kiser said that Strange swung at him but he ducked; however, he hit another officer's forearm, and then Sexton struck him in the back of the head with a pair of handcuffs. Dearing came over and kicked him in the head. He said that Nash and Barber punched and kicked him, and that he did not believe that Hyatt hit him, but instead held Kiser's and Strange's eyeglasses. I did not find Kiser's testimony to be credible. Inmate Danny Morris testified that there were a lot of uses of force when Sgt. Dearing was on shift, and that he, Morris, had suffered harassment and received

4

"ridiculous cases," but conceded that he had not witnessed the incident at issue in this case, but had only been told about it by others.

Legal Standards and Analysis

Because Kiser is the plaintiff in this lawsuit, he has the burden of proving his claims by a preponderance of the evidence. Vogel v. American Warranty Home Service Corp., 695 F.2d 877, 882 (5th Cir. 1983). A "preponderance of the evidence" means the greater weight of the evidence; it is that evidence which, when weighed with that opposed to it, has more convincing force and is more probably true and accurate. If, upon any issue in the case, the evidence appears to be equally balanced, or if it cannot be said upon which side it weighs heavier, then the plaintiff has not met his burden of proof. Smith v. United States, 726 F.2d 428, 430 (8th Cir. 1984).

Kiser's claim is that excessive force was used upon him in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. The Supreme Court, in Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992), held that inmates raising allegations of excessive force must show that the force used was malicious and sadistic for the very purpose of causing harm rather than in a good faith effort to restore discipline; the Court also noted that the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson, 112 S.Ct. at 999.

In accordance with this decision, the Fifth Circuit has identified five factors which should be considered in determining whether an unnecessary and wanton infliction of pain was done in violation of an inmate's right to be free from cruel and unusual punishment. These factors are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. Baldwin v. Stalder, 137 F.3d 836, 839 (5th Cir. 1998); Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992). It should be noted that not every push or shove, even if it may seem unnecessary in the peace of a

judge's chambers, violates a prisoner's constitutional rights. Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied sub nom.* John v. Johnson, 414 U.S. 1033 (1973) (cited with approval in Hudson, 112 S.Ct. at 1000).

In this case, Kiser suffered a small laceration to the back of the head, which was less than an inch long, but which nonetheless bled and was closed with five metallic skin clips. This injury is more than *de minimis* as the Fifth Circuit has interpreted that term. *See* Brown v. Lippard, 472 F.3d 384, 386-87 (5th Cir. 2006). The first Hudson factor weighs in favor of Kiser, although not heavily so.

The second Hudson factor concerns the need for the application of force. The preponderance of the credible evidence shows that the force was applied by Strange in response to an imminent threat posed by Kiser, when Kiser lunged at the officer with a closed fist. This behavior created an immediate and urgent need for the application of force. The second Hudson factor weighs heavily against Kiser.

The third Hudson factor concerns the relationship between the need and the amount of force used. As noted above, Kiser's actions created an immediate need for the application of force, so that the officer could defend himself against the imminent assault. In response to this threat, the credible evidence shows that Strange hit Kiser one time in the face and then took him to the floor where restraints could be placed upon him. While this takedown was forceful, there was no evidence that it was unreasonably so, nor that it was any more forceful than might be expected from a person of Strange's size. The third Hudson factor weighs against Kiser.

The fourth Hudson factor concerns the threat reasonably perceived by the responsible official. In this case, the perceived threat could not have been more clear; Strange had to act quickly to avoid a possible assault from an inmate lunging at him with a closed fist. The fourth Hudson factor weighs heavily against Kiser.

The fifth Hudson factor concerns the efforts made to temper the severity of a forceful response. In this case, Strange hit Kiser in the face one time and then took him to the floor. While

6

no overt efforts were made to temper the severity of this response, it does not appear that Strange had much time in which to do so. The preponderance of the credible evidence showed that Kiser was only hit once and was not kicked, but was taken to the floor, restrained, and then escorted to the infirmary. The fifth Hudson factor weighs against Kiser.

Furthermore, Hudson itself requires a showing that the force be used maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to restore discipline. The preponderance of the credible evidence in this case shows that the force used upon Kiser was applied in an effort to restore the discipline and order which Kiser himself breached by lunging at Strange, and not maliciously or sadistically or for the very purpose of causing harm. Thus, Kiser has not shown that he was subjected to the infliction of cruel and unusual punishment, and so his claim that unconstitutionally excessive force was used upon him is without merit.

## Qualified Immunity

The Fifth Circuit has held that to prevail in a Section 1983 lawsuit, a plaintiff must overcome an officer's defense of qualified immunity. To determine whether relief is appropriate, the court must undertake a two-pronged analysis.

First, the Court must evaluate whether a "plaintiff's allegations, if true, establish a constitutional violation." Second, if a constitutional violation is found to have occurred, the court must determine whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Williams v. Kaufman County, 352 F.3d 994, 1002 (5th Cir. 2003), *citing* Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). These prongs are not sequential, but may be considered in any order. Pearson v. Callahan, 129 S.Ct. 808, 821 (2009).

In Hope, the Supreme Court reiterated the standard for a constitutional right to be clearly established, as follows:

> Its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously

been held unlawful ....but it is to say that in the light of pre-existing law. the unlawfulness must be apparent."

Hope, 536 U.S. at 739, 122 S.Ct. at 2515, *citing* Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The Supreme Court went on to clarify that the factual situation from which the pre-existing constitutional right developed does not have to be "fundamentally similar" to the one before a court when addressing qualified immunity. Rather, qualified immunity can be overcome as long as prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights. The Court concluded that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope, 536 U.S. at 740-41, 122 S.Ct. at 2515-16.

In this case, Kiser has failed to prove the deprivation of a constitutional right or that the Defendants acted in an unreasonable manner. Consequently, Kiser has failed to overcome the qualified immunity defense. The Fifth Circuit has held that it is proper to submit the question of qualified immunity to the finder of fact. *See* Presley v. City of Benbrook, 4 F.3d 405, 409-10 (5th Cir. 1993). Accordingly, the Court finds as a matter of law that the Defendants have established their entitlement to the defense of qualified immunity.

## Conclusions of Law

Based on the above factual findings, made by a preponderance of the credible evidence pursuant to Rule 52(a), F. R. Civ. P., the Court makes the following conclusions of law:

1. The Defendants did not use excessive force upon the Plaintiff Russell Kiser on June 29, 2006.

2. The Defendants did not violate any other clearly established constitutional rights of the Plaintiff Russell Kiser on June 29, 2006.

3. The Defendants are entitled to the defense of qualified immunity from suit.

## Judgment

Based on the above findings of fact and conclusions of law, made in accordance with Rule 52, F. R. Civ. P., it is hereby

ORDERED that judgment is entered in favor of the Defendants in this lawsuit and against the Plaintiff Russell Kiser. It is further

ORDERED that the Plaintiff shall take nothing on his lawsuit and that said lawsuit is DISMISSED with prejudice. Finally, it is

ORDERED that all other motions which may be pending in this lawsuit be and hereby are DENIED.

So **ORDERED** and **SIGNED** this **9** day of **June, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE